# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN ALCEDO and JOHN ALCEDO | : CIVIL ACTION |
| | : |
| v. | : |
| | : |
| STATE FARM MUTUAL | : |
| AUTOMOBILE INSURANCE COMPANY | : NO. 18-4215 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                          **June 19, 2019**

      This declaratory judgment action presents the question whether an automobile insurer must obtain a new writing "signing down" uninsured and underinsured motorist (UM/UIM) coverage from bodily injury liability limits under § 1734 of the Motor Vehicle Financial Responsibility Law (MVFRL)[1] when the insured adds another vehicle to the policy. The Pennsylvania Supreme Court has not decided the issue. In a non-precedential opinion, the Third Circuit has held that a § 1734 sign down of UM/UIM coverage continues in effect after bodily injury liability limits are increased. Several district courts have held that a § 1731 total rejection, rather than a reduction under § 1734, of UM/UIM coverage remains valid even when a vehicle is added to the policy. Based on the rationale of these cases, we conclude that a § 1734 sign down survives the addition of vehicles to the policy.

      Relying on cases involving waiver of stacking coverage under § 1738, the insureds, Susan and John Alcedo, contend that the addition of vehicles to their policy rendered the sign down executed by Mr. Alcedo at the inception of the policy invalid.

---

[1] 75 Pa. C.S.A. §§ 1701–1799.7.

They maintain that their insurer, State Farm Mutual Automobile Insurance Company, was required to obtain a new sign down each time a vehicle was added because the additional vehicle increased the amount of UM/UIM coverage otherwise available. Therefore, so they argue, State Farm's inability to produce a sign down executed contemporaneously with or after the addition of the last vehicle to the policy fixes the UM/UIM limits at the same level as the full bodily injury liability limits.

State Farm counters that § 1738 stacking cases are inapplicable to this § 1734 sign down case. It argues that a rejection of UM/UIM coverage under § 1731 survives the addition of vehicles to the policy because § 1791 alone provides the form to notify the insured of available limits and "no other notice or rejection shall be required." It reasons that because a § 1731 total rejection of UM/UIM coverage is subject to greater scrutiny than a § 1734 sign down, the fact that a rejection does not require a new written rejection when a vehicle is added to the policy means that a reduction of coverage should be treated the same – a new sign down is not required.

We conclude that State Farm fulfilled its obligations under the MVRFL when it offered the Alcedos UM/UIM coverage up to the amount of the bodily injury liability limits and confirmed in writing Mr. Alcedo's decision to reduce that coverage. The cases cited by the Alcedos dealing with waiver of stacking under § 1738 are inapplicable. The sign down executed by Mr. Alcedo remained valid after he added vehicles to the policy.

**Stipulated Facts**

On August 29, 2005, State Farm issued Mr. Alcedo an automobile insurance policy covering a 2005 Nissan Pathfinder and a 1999 Nissan Maxima.[2] The policy provided

---

[2] Stip. of Undisputed Facts at ¶¶ 1-2, Ex. A Bates No. 000001, ECF No. 12.

2

UM/UIM bodily injury liability limits of $100,000 per person and $300,000 per accident.[3] In his insurance application and his sign down form, Mr. Alcedo opted to reduce UM/UIM coverage to $25,000 per person and $50,000 per accident.[4] He also signed the § 1791 notice attached to the application acknowledging that higher UM/UIM limits had been made available to him.[5]

On April 3 and August 25, 2014, Mr. Alcedo added a 1996 Buick Roadmaster and a 2011 Honda Accord, respectively, to the policy.[6] On March 8, 2016, Mr. Alcedo removed the Roadmaster.[7] On July 3, 2017, he added a 2007 Mazda Mazda 3 to the policy.[8] At no time after he signed down UM/UIM coverage at the inception of the policy did he provide another sign down.

On September 29, 2017, Mrs. Alcedo was injured in a covered automobile accident.[9] She sought UIM benefits in the amount of the policy's stacked bodily injury limits of $400,000. After State Farm refused to pay that amount, the Alcedos filed this declaratory judgment action in the state court. After removing the case to this court, State Farm moved for judgment on the pleadings. The Alcedos filed a cross motion.

---

[3] *Id.*

[4] *Id.* at ¶¶ 3-4, Ex. A Bates No. 000001, 000004.

[5] *Id.* at ¶ 6, Ex. A Bates No. 000005.

[6] *Id.* at ¶¶ 7-8, Ex. A Bates No. 000036-000041, 000045-000049.

[7] *Id.* at ¶ 9, Ex. A Bates No. 000053-000060.

[8] *Id.* at ¶ 10, Ex. A Bates No. 000100-000105.

[9] *Id.* at ¶ 12; *see also* Def.'s Mot. for J. on the Pleadings at ¶ 11; Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings at ¶ 3.

**Standard of Review**

In deciding a motion for judgment on the pleadings made pursuant to Rule 12(c), we consider the facts alleged in the pleadings and documents attached as exhibits or incorporated by reference in the pleadings. S̲E̲E̲ F̲ED. R. C̲IV. P. 12(c); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007); *cf. Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 145 & n.1 (3d Cir. 1997) (in Rule 12(b)(6) context).

**Analysis**

An insurer must provide UM/UIM coverage to the limits of the insured's liability limits. However, an insured may decline UM/UIM coverage or opt for UM/UIM limits less than the liability limits. If he declines the coverage, the insured must sign a rejection. If he chooses to reduce the limits, he must sign an election, commonly known as a "sign down," of UM/UIM limits lower than the liability limits. Thus, in the absence of a rejection or a sign down, the insurer must provide UM/UIM coverage "equal to the bodily injury liability limits." 75 Pa. C.S.A. § 1731(c)(1).

An insurer must offer UM/UIM limits of up to $100,000 for an injury to one person and $300,000 for injury to two or more persons in a single accident. An insured may elect to purchase lower benefit levels. To comply with its obligation to offer these and other mandated coverage limits, an insurer may use the notice provided in § 1791.

Section 1791 provides an "**IMPORTANT NOTICE**" advising the insured of available benefits and limits. *Id.* § 1791 (emphasis in original). If the insured signs this notice when he originally applies for coverage, it is presumed that "the insured has been advised of the benefits and limits available," including the right to purchase UM/UIM

4

coverage of at least $100,000 per person and $300,000 per accident. *Id.* No other notice or rejection is required. *Id.*

Relying on *Sackett v. Nationwide Mutual Insurance Co. (Sackett I)*[10], 919 A.2d 194 (Pa. 2007), which held than an insurer must obtain a § 1738 stacking waiver[11] whenever a vehicle is added to a policy, the Alcedos argue that a new § 1734 sign down must also be executed each time a vehicle is added.[12] They contend that the logic behind *Sackett I* applies equally to a sign down of UM/UIM coverage.[13] Consequently, according to them, the addition of a vehicle to a policy requires a new sign down, and, in the absence of one, UM/UIM benefits are equal to the bodily injury limits.[14]

The Pennsylvania Superior Court has rejected similar arguments. In *Smith v. Hartford Ins. Co.*, 849 A.2d 277 (Pa. Super. Ct. 2004), *appeal denied*, 867 A.2d 524 (Pa. 2005), it held that a § 1731 total rejection of UM/UIM coverage, which is scrutinized more closely than a reduction, remains valid even when coverage is increased. The *Smith* court reasoned that § 1791 provides that "no other notice or rejection shall be required" beyond the form provided in that section.[15] In *Sackett I*, the Pennsylvania Supreme Court

---

[10] *Sackett I* was the first in a line of three cases in the Pennsylvania appellate courts that considered the effect of the addition of a vehicle to a policy on a preexisting stacking waiver. *See also Sackett v. Nationwide Mut. Ins. Co.*, 596 Pa. 11, 940 A.2d 329, 334 (2007) ("*Sackett II*"); *Sackett v. Nationwide Mut. Ins. Co.*, 4 A.3d 637, 641 (Pa. Super. 2010) ("*Sackett III*"), *appeal denied*, 613 Pa. 653, 34 A.3d 653 (2011).

[11] When multiple vehicles are insured, the UM/UIM limit applies separately to each vehicle. *Id.* § 1738(a). The limit may be stacked, meaning that the total available limit equals the sum of the limits of all insured vehicles. *Id.* In exchange for a reduced premium, the named insured may waive stacking by signing the rejection form provided in § 1738(d). *Id.* § 1738(b)-(d).

[12] Pl. Mem. in Supp. of Opp'n to Def.'s Mot. for J. on the Pleadings at 9, ECF No. 16.

[13] *Id.* at 10.

[14] *Id.* at 10-11.

[15] *Id.* at 13, 15.

5

drew the distinction between stacking waivers and sign downs. It found that *Smith* had "no bearing" on the matter before it. 919 A.2d at 198. It explained:

> While the conclusion in *Smith* was required by the relevant statutory language of Sections 1731 and 1791, the instant matter raises a different question, because *Smith* did not involve stacking of UM/UIM coverage, or Section 1738 of the MVFRL in any way. The addition of another vehicle to a policy with UIM coverage raises different concerns than those addressed by Sections 1731 and 1791.

*Id.* at 202.

These different concerns stem from § 1738's "purchasing" requirement. As we have explained: "In *Sackett I*, the Pennsylvania Supreme Court held that the addition of a new vehicle to a multi-vehicle policy constituted a purchase of new uninsured and underinsured coverage, requiring the insurer to obtain a new waiver of stacked coverage." *Ewart v. State Farm Mut. Auto. Ins. Co.*, 257 F. Supp. 3d 722, 726 (E.D. Pa. 2017) (citing *Sackett*, 919 A.2d at 202). In *Glazer v. Nationwide*, 872 F. Supp. 2d 396, 402 (M.D. Pa. 2012), the court distinguished *Sackett I*, stating "§ 1731 does not impose the same 'purchase' requirement as § 1738 . . . ." Section 1738 requires that the insured be given the opportunity to waive stacking "when 'purchasing uninsured or underinsured motorist coverage.'" *Id.* (quoting 75 Pa. C.S.A. § 1738(c)). But, where "coverage has been wholly waived, there is no automatic, subsequent purchase of . . . coverage when a new car is added to an existing insurance policy." *Id.*; *see also Gierlach*, 2015 WL 5286179, at *2 ("Due to Mr. Gierlach's wholesale waiver of UIM benefits available under the Policy, the addition of cars to the Policy at a later date was not a 'subsequent purchase of UIM coverage,' and was not sufficient to constitute affirmative action by Defendants to reinstate UIM coverage.") (citing *Glazer*, 872 F. Supp. 2d at 402). Accordingly, as *Smith*

6

held and *Sackett I* agreed, "a decision to reject [UM/]UIM benefits carries forward until affirmatively changed." *Glazer*, 872 F. Supp. 2d at 402; *see also Cahall v. Ohio Cas. Ins. Co.*, No. 14-1246, 2015 WL4407563 (W.D. Pa. July 20, 2015) (citing *Glazer* with approval); *Tolentino v. State Farm Ins. Co.*, No. 15-00031, 2015 WL 2208812, at *4 (E.D. Pa. May 12, 2015) ("A valid rejection of UIM coverage continues for the life of an insurance policy until affirmatively changed.").

Likewise, a sign down of UM/UIM benefits remains in effect unless the insured affirmatively changes it later. In *Nationwide Mutual Insurance Co. v. Merdjanian*, Merdjanian purchased a policy with signed down UM/UIM coverage. 195 F. App'x 78, 79 (3d Cir. Sept. 20, 2006). He later simultaneously added a vehicle to the policy and increased the bodily injury liability limits. *Id.* In response, Nationwide provided him with forms to change his UM/UIM limits, but he did not return them. *Id.* Merdjanian then added a third vehicle and again did not request a change in his UM/UIM limits. *Id.* at 80. A subsequently issued "Declarations Page" reflected the same reduced UM/UIM coverage. *Id.* The Third Circuit found it "significant" that Merdjanian paid the premiums reflected in the Declarations Page and never objected to the reduced UM/UIM coverage. *Id.* at 80, 83 n.4.

The court concluded that Nationwide had fulfilled its obligations under §§ 1731 and 1734 when it obtained a sign down from Merdjanian at the time he purchased the policy. *Id.* It observed that nothing in the MVFRL "requires an insurer to obtain a new writing under section 1734 each time an insured chooses to increase liability coverage or otherwise alter the policy." *Id.* Rather, it requires only that an insurer offer UM/UIM

coverage less than or equal to liability coverage and that any purchase of reduced coverage must be in writing. *Id.* at 81-82 (citing 75 Pa. C.S.A. §§ 1731, 1734).

The court found that the language of § 1731 supported its conclusion "[t]hat changes in the amount of liability coverage do not trigger additional requirements under the MVFRL . . . ." *Id.* at 82. It noted that the section "applies specifically to the '*deliver[y] or issu[ance] for delivery*' of a '*liability insurance policy.*'" *Id.* (quoting 75 Pa. C.S.A. § 1731) (italics added in *Merdjanian*). When read together, §§ 1731 and 1734 "clearly impose obligations only with respect to the issuance of policies, not changes to pre-existing policies." *Id.* (citing 75 Pa. C.S.A. § 1734; *Smith*, 849 A.2d 277). It then applied § 1791, holding that once Nationwide provided notice of available limits under this section, and fulfilled its §§ 1731 and 1734 obligations, it "ha[d] no further obligation to provide notice or rejection with regard to UM/UIM coverage." *Id.*

The Third Circuit distinguished the "failure to obtain a valid *rejection* form" from "the *reduction* context at issue here." *Id.* at 83 (emphasis in original). It remarked that the MVFRL "treats complete rejection of UM/UIM coverage far more stringently than reduction by specifying precise language to be included in a rejection form and by the other formalities set forth in section 1731(c.1)." *Id.* On the other hand, §1734 "requir[es] only a 'request in writing.'" *Id.* (quoting 75 Pa. C.S.A. § 1734). The court found this difference consistent with the MVFRL's underlying policy of "protect[ing] consumers from unknowingly waiving their UM and UIM coverage." *Id.* (citing *Lewis v. Eric Ins. Exch.*, 793 A.2d 143 (Pa. 2002)). It explained:

> The Pennsylvania Legislature, clearly more concerned about the unknowing waiver of all UM/UIM coverage than a consumer's choice to purchase only a reduced amount of such coverage, logically chose to impose the severe penalty

8

> contained in section 1731(c.1)—i.e., increasing UM/UIM coverage to the liability limits, only in the case of rejection.

*Id.* (emphasis in original). Thus, it concluded there was "no basis" "for importing § 1731(c.1)'s penalty relating to rejections into the reduction context." *Id.*

Here, like the insured in *Merdjanian*, Mr. Alcedo signed down UM/UIM limits at the inception of the policy.[16] He subsequently added vehicles to the policy, increasing the bodily injury liability and UM/UIM limits through stacking.[17] These changes did not necessitate the execution of a new sign down. *Merdjanian*, 195 F. App'x at 81 ("increas[ing] liability coverage or otherwise alter[ing] the policy" does not invalidate original sign down of UM/UIM coverage). It is "the initial issuance of a policy, rather than alteration of the policy's liability coverage limits, that triggers the MVFRL's requirements." *Id.* at 82. As the insurer in *Merdjanian* had done, State Farm fulfilled these requirements when it offered Mr. Alcedo UM/UIM coverage in amounts less than or equal to liability coverage and confirmed his purchase of reduced coverage in writing.[18]

Mr. Alcedo signed a § 1791 "IMPORTANT NOTICE" advising him of the minimum coverage that must be made available to him.[19] This coverage included UM/UIM limits of at least $100,000 per person and $300,000 per accident.[20] The notice advised him that

---

[16] Stip. of Undisputed Facts at ¶ 4, Ex. A Bates No. 000004.

[17] *Id.* at ¶ 7, Ex. A Bates No. 000036-000041. It is not clear if stacking was available in *Merdjanian*. Merdjanian sought the bodily injury liability limit stacked for the three vehicles on the policy, and the court explained that "'[s]tacking' coverage allows an insured to combine the limits of per-vehicle coverage for all the vehicles on the policy to pay the loss from a single occurrence." 195 F. App'x at 80 & n.1. However, the court affirmed the trial court's award of the unstacked, signed down UM/UIM limit. *Id.* at 80. Regardless, the bodily injury liability limit increased when Merdjanian raised the per-vehicle limit contemporaneous with his addition of the second vehicle to the policy. *Id.* at 79.

[18] Stip. of Undisputed Facts at ¶ 4, Ex. A Bates No. 000004.

[19] *Id.* at ¶ 6, Ex. A Bates No. 000005.

[20] *Id.*

he could purchase reduced coverage.[21] He paid reduced premiums for the signed down coverage and did not object to the declarations pages showing the reduced UM/UIM coverage.[22] *See id.* at 83 n.4.

The § 1738 stacking waiver cases relied upon by the Alcedos are inapplicable. These cases turn on whether the addition of the vehicle to the policy constituted a "purchase" of UM/UIM coverage. *Sackett*, 919 A.2d at 201. But, unlike § 1738, §1734 contains no "purchasing" requirement. *Compare* 75 Pa. C.S.A. § 1734 *with id.* § 1738. The parties agree that the "sole issue" is "whether the §1734 sign down is valid or if Plaintiff[s] must be afforded underinsured coverage up to the amount of the bodily injury limits . . . ."[23] The Alcedos' reliance upon *Sackett I* is misplaced.

Because Mr. Alcedo executed a § 1734 sign down at the inception of the policy and did not affirmatively request a change in the limits, the Alcedos' UM/UIM coverage is limited to $25,000 per person and $50,000 per accident, stacked. Therefore, we shall grant State Farm judgment on the pleadings.

---

[21] *Id.*

[22] *Id.* at Ex. A Bates No. 000208.

[23] Def.'s Mot. for J. on the Pleadings at ¶ 3; Pl.'s Mot. for J. on the Pleadings at ¶ 12, ECF No. 14.